1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8

RODRICK MATHENY,

Plaintiff,

9

v.

10
11
12
13
14
15

UNUMPROVIDENT
CORPORATION; UNUM LIFE
INSURANCE COMPANY OF
AMERICA; DIRECT RESPONSE
INSURANCE ADMINISTRATIVE
SERVICES, INC., d/b/a
INSURANCE ADMINISTRATIVE
SERVICES; U.S. BANK, NA, d/b/a
U.S. BANK HOME MORTGAGE;

Defendants.

NO.  CV-06-365-RHW

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

16
17
18
19
20
21
22
23
24
25
26
27
28

On December 1, 2006, Plaintiff brought suit against Defendant
Unumprovident Corporation in Asotin County Superior Court, seeking a
declaratory judgment regarding an accidental death insurance policy. That
Complaint was amended to name Unum Life Insurance Company of America
(hereinafter "Unum") as the sole defendant, and the case was removed to the U.S.
District Court for the Eastern District of Washington on December 26, 2006. On
January 9, 2007, Plaintiff filed a second lawsuit (Cause No. CV-07-011-FVS) in
this Court regarding the same insurance policy, naming as defendants Direct
Response Insurance Administrative Services, Inc., d/b/a Insurance Administrative
Services (hereinafter "DRIASI"), and U.S. Bank, NA, d/b/a U.S. Bank Home
Mortgage (hereinafter "U.S. Bank"). The two cases were consolidated under Cause
No. CV-06-065-RHW on March 16, 2007.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 1

1      Plaintiff seeks damages from Defendants Unum, DRIASI, and U.S. Bank
2   under theories of breach of contract, negligence, violations of the Washington State
3   Consumer Protection Act, bad faith, misrepresentation, and promissory estoppel.
4   Plaintiff also seeks recovery of reasonable attorney fees and costs pursuant to
5   *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37 (1991) and RCW
6   19.86.090.
7      A bench trial was held on September 15-16, 2008, in Spokane, Washington.
8   At trial, Plaintiff was represented by Robert F. Greer, II. Unum and DRIASI were
9   represented by Charles C. Huber. U.S. Bank was represented by Scott R. Smith.
10  Having fully reviewed all the materials submitted by the parties and the record in
11  this matter, the Court enters the following Findings of Fact and Conclusions of
12  Law.
13
14                          **FINDINGS OF FACT**
15      Most of the facts in this case are undisputed. The following Findings of Fact
16  are based on the facts stipulated by the parties in advance of trial and the evidence
17  adduced at trial.
18      The Court makes the following Findings of Fact:
19      Plaintiff Rodrick Matheny is the son of Keith Matheny and the sole
20  beneficiary of Keith Matheny's accidental death and dismemberment (hereinafter
21  "AD&D") policy underwritten by Unum. Unum sells certain insurance products
22  including AD&D products, and DRIASI is a third party administrator that provides
23  certain administrative services for Unum in connection with insurance policies,
24  including the AD&D policy at issue in this matter. Unum and DRIASI contracted
25  with U.S. Bank to implement a direct mail campaign through which Unum and
26  DRIASI would solicit enrollment in AD&D policies by U.S. Bank home mortgage
27  customers. U.S. Bank buys, sells, originates, markets, and services home
28  mortgages throughout the country.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 2

The development and operation of the direct mail campaign are convoluted processes that required the testimony of several witnesses to untangle. For present purposes, the process began in 1997 when Unum reached an agreement with U.S. Bank's predecessor, FirstStar Mortgage, authorizing FirstStar to solicit and procure applications for Unum's insurance policies, and to collect the initial premium due. In 1998, Unum delegated the duties associated with administering these policies (including the billing and collection of all premiums) to DRIASI , who in turn coordinated billing and collection duties with U.S. Bank.

At all times relevant to this lawsuit, the direct mail campaign operated as follows: U.S. Bank included solicitation materials in the monthly mortgage statements mailed to its mortgage customers. These materials (which will be discussed in more detail below) notified mortgage customers that U.S. Bank would provide them with $3,000 in complimentary life insurance and offered customers the option to select additional AD&D insurance coverage, the premiums for which would be added to customers' monthly mortgage payments. If a customer decided to enroll, U.S. Bank forwarded the customer's information to DRIASI, who processed the application for Unum. After the policy was established, DRIASI mailed a welcome packet to the customer, including a certificate of insurance and schedule of benefits. U.S. Bank added customers' premiums to their monthly mortgage statements and forwarded paid premiums to DRIASI, less 25% for U.S. Bank's work in billing and collecting the premiums. Unum underwrote the AD&D policies and eventually received from DRIASI the remainder of the premiums.

Keith Matheny was a customer of U.S. Bank (and its predecessor, FirstStar Mortgage) from December 2001 through January 2004. In December 2001, Keith Matheny took out a home mortgage with FirstStar Mortgage in the amount of $40,500, and began paying a monthly mortgage payment of $344.51. Keith Matheny was on a bill and receipt system, under which FirstStar (and later, U.S. Bank) would send Keith Matheny a new mortgage statement upon receipt of each

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 3

payment. Keith Matheny received no regular monthly mortgage statements; even though his mortgage payment was due on the first of each month, his statements were generated only when U.S. Bank received each mortgage payment. By the fall of 2003, Keith Matheny had prepaid his mortgage by months, and he paid his December 2003 mortgage on October 6, 2003. The same day, U.S. Bank issued a new mortgage statement showing that Keith Matheny's next payment of $344.51 was due on January 1, 2004.

Included with Keith Matheny's January mortgage statement was a one-page sheet inserted as part of the direct mail campaign described above. The sheet included a solicitation letter on the front side, a summary of coverage on the back side, and a detachable enrollment form at the bottom of the sheet.[1]

The solicitation letter offered customers of U.S. Bank $3,000 of AD&D insurance at no cost, stating: "All you have to do to receive this insurance is complete the enrollment form below and return it with your mortgage payment." The letter went on to invite customers to select additional AD&D coverage up to $250,000, stating: "Premiums for the additional coverage you select will be included with your monthly mortgage payment. There are no extra bills or checks to write." The letter concluded: "Be sure to read the Summary of Insurance Benefits on the backside of this letter. It explains the policy limitations and exclusions of this insurance coverage." Above the enrollment form, the sheet included a disclaimer stating that the insurance product solicited by the letter was

---

[1]These solicitation materials were designed by an entity named International Marketing and Administration Company, who is not party to this lawsuit. The solicitation letter bears the signature of one Edward Klayman, a "Licensed Appointed Agent of Unum Life Insurance Company of America." Testimony of multiple witnesses established that all Defendants named in this lawsuit reviewed and approved the solicitation materials.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 4

not a product of U.S. Bank or its affiliates, and was not insured by the Federal

Deposit Insurance Corporation or any other entity.

On the back of the sheet, the summary of coverage explained the monthly

premiums for the optional coverage, up to a monthly premium of $27.50 for

$250,000 of individual coverage. Under the heading, "Rates for Additional

Coverage - Coverage reduces 50% when Insured is age 70 or older," the following

language appeared: "Coverage is contingent upon our receipt of the first premium

prior to the due date and during the insured's lifetime. Your coverage is effective

on the first, regular billing date following acceptance of your application by the

Plan Administrator, provided your first month's premium has been paid." At the

bottom of this sheet (i.e., on the back of the detachable enrollment form), under the

heading "IMPORTANT," the following instructions appeared:

> 3.    Mail your completed form. DO NOT SEND ANY PREMIUM
> PAYMENT. The basic $3,000 coverage is provided by the
> financial institution with no further obligation to you. Premiums
> for the additional coverage you select will be conveniently
> added to your mortgage payment as soon as your new
> Certificate of Insurance is issued.

Kelly Smith, a former director of the special risk underwriting department at

Unum that oversaw these AD&D policies, testified that Unum's goal with these

solicitation materials was to make it as easy as possible for home mortgage

customers to enroll by assuring them that no additional bills or checks were

necessary. Raymond LuBien, an expert in the banking and insurance industry who

has developed and implemented similar direct mail campaigns for several different

employers, also testified that insurance companies like Unum have had great

success with such campaigns precisely because of the ease with which customers

can enroll.

Keith Matheny signed the enrollment form on October 18, 2003, selecting

$250,000 in additional coverage and designating his son, Plaintiff Rodrick

Matheny, as his beneficiary. U.S. Bank received the signed enrollment form

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 5

sometime thereafter, and forwarded the form on to DRIASI. DRIASI received this enrollment form on November 6, 2003. DRIASI and Unum thereafter processed and approved Keith Matheny's application.

On November 11, 2003, DRIASI sent Keith Matheny a set of documents that an employee of DRIASI described in testimony as a "welcome packet." This welcome packet was comprised of three documents: a welcome letter, schedule of benefits, and certificate of insurance.

The welcome letter, which was signed by a Plan Administrator of DRIASI, stated:

> This valuable Plan provides you with a substantial sum of Accidental Death and Dismemberment insurance protection – to help make sure your loved ones are financially secure if an accident strikes. And, of course, as long as you remain a US Bank Home Mortgage customer and your premiums are paid when due, this important coverage remains in force.

The welcome letter also mentioned the amount of Keith Matheny's monthly premium ($27.50). The schedule of benefits included an "Effective Date" (January 1, 2004) and information on coverage amounts. The certificate of insurance enclosed with this packet was issued by Unum. The certificate referenced Master Policy # GSR 19971 and included the following language: "This certificate describes the main features of the Master Policy. Read it Carefully. However, the Mater [sic] Policy is the only contract under which benefit payments are made... We certify that We will provide you with the benefits for loss as described herein, subject to the payment of premium." None of the three documents included in the welcome packet mentioned a due date for Keith Matheny's first premium; none of the documents repeated the statement that Keith Matheny's coverage was contingent upon receipt of his first premium payment before the due date and during his lifetime.

In November, through its normal course of operations, U.S. Bank downloaded information from DRIASI indicating that some U.S. Bank customers,

**FINDINGS OF FACT AND CONCLUSIONS OF LAW * 6**

including Keith Matheny, had selected optional insurance. On November 19, 2003, U.S. Bank added a monthly premium of $27.50 to Keith Matheny's mortgage payment. U.S. Bank did not generate a new January mortgage statement reflecting the increased amount due.

On January 6, 2004, U.S. Bank received Keith Matheny's January mortgage payment in the amount of $344.51. This was the amount shown on Keith Matheny's January mortgage statement, which was generated before he selected optional AD&D insurance and did not include the premium of $27.50 that had been added to his payment.

Also on January 6, 2004, U.S. Bank generated a new mortgage statement for Keith Matheny, with payment due February 1, 2004. The statement showed a total amount due of $372.01, which included a mortgage payment of $344.51 and an insurance premium of $27.50 (listed on the statement as "Other"). Accompanying the mortgage statement was a "Notice of Non-Payment of Optional Insurance," stating: "The payment due 01-01-04 of your loan has been applied without optional insurance premiums of 27.50. Please return your remittance with this notice to keep your insurance in force." Testimony at trial established that, according to its normal practices, U.S. Bank would have mailed the statement and notice to Keith Matheny on January 7, 2004.

On January 10, 2004, Keith Matheny died in a single car accident before making any additional payments to Defendants. On February 9, 2004, Plaintiff Rodrick Matheny submitted payment to U.S. Bank in the amount of $372.01.

Plaintiff submitted a claim for death benefits to DRIASI on February 20, 2004. On March 8, 2004, Unum sent Plaintiff a check for $3,000 – the amount of basic coverage provided for Keith Matheny by U.S. Bank. On March 11, 2004, Unum sent Plaintiff a letter notifying him that additional benefits were not payable because Unum had not received Keith Matheny's first premium payment prior to the due date and during the insured's lifetime, and thus the AD&D policy never

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 7

became effective. Plaintiff appealed that decision on June 7, 2004; the appeal was denied on the same basis on July 2, 2004. This suit followed.

In addition to the foregoing chronology, the Court finds the following evidence to be relevant to its determination.

A document setting forth U.S. Bank's optional insurance procedures was entered into evidence at trial. This document indicates a "revised" date of March 15, 2004. At trial, Sarah Johnson-Fodge (supervisor of the insurance department at U.S. Bank) testified that this document sets forth revisions to the optional insurance procedures that would have been adopted by the department in the year preceding March 15, 2004. Ms. Johnson-Fodge could not recall when the particular procedures relevant to this matter were adopted, but testified that they would have been in place prior to March 15, 2004. It is more likely than not that the revised procedure was in effect in October 2003.

For a mortgage customer who has just added optional insurance to their account, these procedures provide that a new statement must be generated when the system shows that "the loan due date is equal to the plan due date." Ms. Johnson-Fodge explained that "loan due date" means the date on which the customer's mortgage payment is due, and "plan due date" means the date on which the customer's new insurance premium payment is due. Thus, if a customer had recently selected optional AD&D insurance, and the first premium for that insurance was due on the same date as the customer's next mortgage payment, these procedures provide that a new mortgage statement should be generated to the customer. Ms. Johnson-Fodge testified that these procedures were adopted in response to repeated problems U.S. Bank had experienced with mortgage customers on the bill and receipt system missing their first insurance premium payment.

Also entered into evidence at trial was Master Policy # GSR 19971. Although Keith Matheny never saw a copy of this instrument, his insurance

**FINDINGS OF FACT AND CONCLUSIONS OF LAW * 8**

contract with Unum was controlled by its terms. The Master Policy purports to be an agreement between Unum and an entity styled "Upper Northwest Bankers Association," defined as "the Policyholder." The Master Policy also defines "Insured" as "All eligible persons described in the Application who are enrolled for this insurance."

The Master Policy includes provisions for "Premiums and Grace Period," which were updated by an endorsement effective July 1, 1997. Those provisions read:

> Premiums are due for this Policy on or before the date the Policy begins or on or before the anniversary date, whichever applies. If the premium is not paid when it is due, the Policyholder has a 31 day grace period to pay. During the Grace Period, the Policy will stay in force. There is no grace period if We have given the Policyholder notice at least 30 days before the premium due date that we are going to end the Policy. If the Policyholder does not pay the premium by the end of the Grace Period, the Policy will end. The Policyholder must pay Us the pro rate premium for the time the Policy was in force during the Grace Period.

Testimony at trial established that the Upper Northwest Bankers Association is essentially a holding company whose sole *raison d'etre* is to satisfy the legal requirements for creation of a group policy under which individual mortgage customers can obtain AD&D insurance from Unum. The Master Policy and its endorsements are signed only by agents of Unum. No premium payments were ever made by the Upper Northwest Bankers Association; all premium payments were in fact made by individual mortgage customers, who this Master Policy would define as "Insured."

At trial, there was some confusion over what was the actual due date for Keith Matheny's first insurance premium payment. Ms. Smith, who directed the department at Unum that was in charge of these AD&D policies, testified that no coverage would have existed unless Unum *received* the premium payment by December 31, 2004. However, U.S. Bank's internal reports indicated that the due date for payment was January 1, 2004, the date Keith Matheny's January mortgage

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 9

payment was due. Ms. Johnson-Fodge also testified that, while customers' mortgage payments are due on the first of the month, the bank does not charge late fees until the 15th of the month, and the bank will not report the account delinquent until the last day of the month. As noted above, neither the solicitation materials nor the welcome packet that Keith Matheny received specified a due date for his first premium payment.

CONCLUSIONS OF LAW

Plaintiff seeks damages from Unum, DRIASI, and U.S. Bank under theories of breach of contract, negligence, violations of the Washington State Consumer Protection Act, bad faith, misrepresentation, and promissory estoppel. Plaintiff also seeks recovery of reasonable attorney fees and costs pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37 (1991) and RCW 19.86.090. The Court makes the following conclusions of law regarding those claims.

**I.    BREACH OF CONTRACT**

Plaintiff asserts breach of contract claims against Unum and U.S. Bank.

*A.    Unum*

Plaintiff argues that an insurance contract was formed between Keith Matheny and Unum, and Unum breached that contract by failing to pay death benefits in the amount of $250,000. Unum acknowledges that the solicitation materials sent to Keith Matheny were an offer, and that the return of Keith Matheny's signed enrollment form constituted acceptance of that offer. However, Unum argues that no contract was formed because Keith Matheny failed to fulfill a condition precedent, *viz.*: payment of the first premium prior to the due date and during Keith Matheny's lifetime. In response, Plaintiff argues that Unum is now estopped from asserting that condition precedent or, alternatively, that Unum waived that condition precedent.

Separately, Plaintiff seeks a declaratory judgment that the grace period

**FINDINGS OF FACT AND CONCLUSIONS OF LAW * 10**

provided by the Master Policy applies to Keith Matheny, and that Unum breached

its contract by denying Plaintiff's claim without applying the grace period.

*(i). Estoppel*

The elements of estoppel are:

> (1) an admission, statement, or act inconsistent with a claim afterward asserted, (2) action by another in reasonable reliance upon that act, statement or admission, and (3) injury which would result to the relying party if the first party were allowed to contradict or repudiate the prior act, statement or admission.

*Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wash. 2d 726, 734 (1993).

These elements must be proven by clear and convincing evidence. *Id.* at 734-35.

Under Washington law, "the general rule is that, while an insurer may be

estopped, by its conduct or its knowledge or by statute, from insisting upon a

forfeiture of a policy, yet under no conditions can the coverage or restrictions on

the coverage be extended by the doctrine of waiver or estoppel." *Carew, Shaw &*

*Bernasconi v. General Cas. Co.,* 189 Wash. 329, 336 (1937). The rule has been

criticized as "eroding," and Washington law recognizes at least two exceptions to

it. *Estate of Hall v. HAPO Fed. Credit Union*, 73 Wash. App. 359, 362-63 (1994)

(quoting 16B J. Appleman, *Insurance Law* § 9090, at 582 n. 5 (1981)); *see*

*Saunders v. Lloyd's of London,* 113 Wash. 2d 330, 336 (1989) (holding that an

insurer can be estopped from denying coverage for failure to make payments where

that insurer has established a course of conduct of accepting late payments); *Safeco*

*Ins. Co. of Am. v. Butler*, 823 P.2d 499, 505-06 (Wash. 1992) (holding the *Carew*

rule to be inapplicable to claims of insurer bad faith).

The Court finds the *Carew* rule inapplicable.  In *Carew*, the insured received

a policy that insured only a certain kind of safe from burglary. The insured tried to

amend the coverage language to cover a different area of the safe. Under the policy

as written, there was no coverage. Plaintiff here is not seeking to change the

insurance contract's substantive terms of coverage, which would implicate the

*Carew* rule. Rather, Plaintiff argues that Unum is estopped from relying on a

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 11

1   condition precedent to coverage, circumstances which are outside of the

2   *Carew* rule.

3           Turning to the elements of estoppel, the undisputed facts establish that

4   Unum's later assertion of a condition precedent is inconsistent with numerous

5   statements in the materials received by Keith Matheny before his death. The

6   solicitation letter informed him that, "All you have to do to receive this insurance

7   is complete the enrollment form below and return it with your mortgage payment...

8   there are no extra bills or checks to write." While the summary of coverage

9   provided, under an impertinent heading, that "coverage is contingent upon our

10  receipt of the first premium prior to the due date and during the insured's lifetime,"

11  below that language and under the heading "IMPORTANT," the letter instructed

12  Keith Matheny: "DO NOT SEND ANY PREMIUM PAYMENT." Furthermore,

13  the words used in the welcome letter, certificate of insurance, and the Notice of

14  Non-Payment of Optional Insurance all create the impression that the AD&D

15  policy was in force on the dates Keith Matheny received those documents.

16          The Court finds instructive a decision out of the Fifth Circuit Court of

17  Appeals, *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304 (5th Cir.

18  2005).[2] *Monumental*'s facts are nearly identical to those of the case at bar. There,

19  as here, the insured could only have fulfilled the asserted condition precedent by

20  disregarding the solicitation materials' instructions *not* to write any additional

21  checks. *See id.* at 312.

22          The solicitation materials, read as a whole, instructed Keith Matheny that all

23  he must do to receive coverage was to return the enrollment form. After he did so,

24  the additional materials he received fostered the impression that his coverage was

25  already in force. The evidence adduced at trial established that Keith Matheny

26  _____

27          [2] Although this decision applies Texas law, the elements of estoppel in that

28  jurisdiction are essentially identical to the elements of estoppel under Washington

    law.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 12

relied on those statements, and the Court finds that reliance to be reasonable. Moreover, it is undisputed that Plaintiff has been injured because of his father's reliance. Thus, the Court finds that Plaintiff has proven all three elements of estoppel by clear and convincing evidence.

### (ii). Waiver

In the insurance context, "waiver requires that the insurers voluntarily and intentionally relinquished a known right or that their conduct 'warrants an inference of the relinquishment of such right.'" *Saunders*, 113 Wash. 2d at 339-40 (quoting *PUD 1 v. WPPSS*, 104 Wash. 2d 353, 365 (1985)). Waiver by conduct requires unequivocal acts evincing the intent to waive. *Id.*; *Mike M. Johnson, Inc. v. County of Spokane*, 150 Wash. 2d 375, 386 (2003); *James E. Torina Fine Homes, Inc. v. Mutual of Enumclaw Ins. Co.,* 118 Wash. App. 12, 19 (2003).

The summary of coverage included in the solicitation materials did articulate Unum's right to require payment of the first premium as a condition precedent to coverage. However, other language in the solicitation materials – language that was highlighted and tagged as "IMPORTANT" – suggested that Unum had decided not to enforce that right. Standing alone, this language probably would not amount to the kind of unequivocal act necessary to infer waiver by conduct. However, the impression that Unum knowingly waived its right was bolstered by its issuance of a welcome letter, schedule of benefits, and a certificate of insurance before it received Keith Matheny's first premium payment. The Court finds that the issuance of this welcome packet, together with the language in the solicitation materials, constitutes unequivocal evidence of Unum's intent to relinquish its right to require payment of the first premium prior to coverage. Accordingly, the Court deems Unum to have waived that condition precedent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 13

*(iii). Interpretation of the Master Policy*

The following principles apply to the Court's interpretation of the Master Policy:

> The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance. It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative. A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties.

*Phil Schroeder v. Royal Globe Ins. Co.,* 99 Wash. 2d 65, 68 (1983) (internal citations and quotations omitted).

The grace period purportedly applies to the Policyholder, defined as the Upper Northwest Bankers Association. Because this entity is solely a holding company who pays no premiums, granting it the benefit of a grace period renders this provision of the Master Policy absurd. The only reasonable construction of the Master Policy is that the grace period applies to the one party who does pay premiums: the insured. Therefore, Unum's failure to extend the grace period to Keith Matheny breached its obligation under the Master Policy.

In conclusion: Plaintiff has established that an insurance contract was formed between Keith Matheny and Unum, and that Unum breached that contract by failing to pay death benefits and failing to extend the benefit of the Master Policy's grace period to Keith Matheny. The evidence establishes both that Unum waived its right to require payment of the first premium as a condition precedent, and that Unum is now estopped from asserting that condition precedent.

**B.    U.S. Bank**

Plaintiff's breach of contract claim against U.S. Bank is of a different order: Plaintiff claims that U.S. Bank assumed a contractual duty to add Keith Matheny's insurance premium to his mortgage statement, and breached that duty by failing to issue a new mortgage statement including the premium amount before the premium payment was due. At trial, U.S. Bank acknowledged that it had assumed an

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 14

obligation of some nature, but declined to say whether a claim for breach of that obligation would sound in contract or tort. Regardless, U.S. Bank argues that its obligation was limited to adding Keith Matheny's insurance premium to his mortgage *payment* (and his next routinely generated mortgage statement), not generating a new mortgage *statement*.

Washington law recognizes two kinds of contracts: unilateral and bilateral. *Higgins v. Egbert,* 28 Wash. 2d 313, 317-18 (1947). In unilateral contracts, the promise of one party becomes binding when the other party performs the act upon which the promise is based. *Id.*; *see also Multicare Medical Ctr. v. Dep't of Social and Health Serv.,* 114 Wash. 2d 572, 584 (1990). Sufficient consideration for a unilateral contract may be provided by a benefit received by the promisor at the request of the promisor. *Browning v. Johnson,* 70 Wash.2d 145, 148 (1967).

The Court finds that the solicitation materials received by Keith Matheny constituted an offer from U.S. Bank to form a unilateral contract. U.S. Bank's promise is articulated on the enrollment form by the following language:

> 3.    Mail your completed form. DO NOT SEND ANY PREMIUM PAYMENT. The basic $3,000 coverage is provided by the financial institution with no further obligation to you. Premiums for the additional coverage you select will be conveniently added to your mortgage payment as soon as your new Certificate of Insurance is issued.

This promise became binding when Keith Matheny signed and returned the enrollment form. The consideration for this promise was the benefit U.S. Bank would receive from Keith Matheny's continuing performance (*viz.*, 25% of all premiums paid).

U.S. Bank's argument that it promised only to add the premium to Keith Matheny's *payment*, not his *statement*, minces words and is unpersuasive. Read as a whole, the solicitation materials promise to bill the insured in such a way as to effectuate timely payment of the insurance premiums. Addition of the premium amount to U.S. Bank's internal accounting system was insufficient to fulfill this

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 15

promise. When Keith Matheny returned the signed enrollment form, U.S. Bank was contractually obligated to bill him for his insurance premiums in advance of their due dates. That Keith Matheny had elected to receive his mortgage statements on a bill and receipt system was of no import and does not affect U.S. Bank's obligation. U.S. Bank breached its obligation when it failed to bill Keith Matheny in advance of the first premium payment's due date. That Plaintiff has suffered injury as a result of breach (*viz.*, the denial of his insurance claim) is undisputed.

## II.   NEGLIGENCE

Plaintiff argues that U.S. Bank undertook the obligation to bill Keith Matheny for his optional AD&D insurance premiums, and breached that duty by failing to exercise ordinary care in the billing and collection of those premiums. U.S. Bank concedes the existence of a duty, but argues that it fulfilled that duty by adding Keith Matheny's insurance premium to his mortgage payment and including that amount on his next regularly generated mortgage statement.

To prove negligence, Plaintiff must establish "the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wash. 2d 468, 474 (1998). A party who undertakes to render services for another is liable for harm resulting from the party's failure to exercise reasonable care. *Estes v. Lloyd Hammerstad, Inc.*, 8 Wash. App. 22, 26 (1972) (citing Restatement (Second) of Agency § 379(2) (1958)).

The evidence establishes that U.S. Bank assumed the duty of timely billing Keith Matheny for his insurance premiums. Further, the evidence establishes that U.S. Bank failed to comply with its own billing procedures for optional AD&D insurance, which were in place at the time Keith Matheny elected to receive AD&D coverage. These procedures provide that U.S. Bank should generate new mortgage statements for customers who elect to receive optional AD&D coverage after their regular mortgage statements have already been issued. Here, U.S. Bank

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 16

1    simply failed to do so, and thus breached its duty. This breach was the proximate
2    cause of Unum's denial of Plaintiff's insurance claim, an injury for which the
3    Court thus finds U.S. Bank liable.

4    **III.    WASHINGTON STATE CONSUMER PROTECTION ACT**
5    **VIOLATIONS, MISREPRESENTATION, AND BAD FAITH**

6         Plaintiff claims that Unum and U.S. Bank are liable under the Washington
7    State Consumer Protection Act ("CPA") for deceptive acts in connection with their
8    solicitation and billing of AD&D premiums. Plaintiff also claims that DRIASI and
9    Unum are liable under the CPA and common law for their bad faith failures to
     investigate Plaintiff's insurance claim.

10        There are five elements of a CPA claim: "(1) an unfair or deceptive act or
11   practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury
12   to plaintiff in his or her business or property, and (5) causation." *Estate of Hall*, 73
13   Wash. App. at 365. No CPA claim will lie for an insurer's denial of an insurance
14   claim where the insurer has a reasonable justification for denying coverage. *Id.* at
15   366. The insurance commissioner has defined a number of practices as deceptive
16   acts, including "misrepresenting pertinent facts or insurance policy provisions" and
17   "refusing to pay claims without conducting a reasonable investigation." WAC 284-
18   30-330. To determine whether a deceptive act impacts public interest, the
19   following factors are relevant:

20       (1) Were the alleged acts committed in the course of defendant's
21   business? (2) Are the acts part of a pattern or generalized course of
     conduct? (3) Were repeated acts committed prior to the act involving
22   plaintiff? (4) Is there a real and substantial potential for repetition of
     defendant's conduct after the act involving plaintiff? (5) If the act
23   complained of involved a single transaction, were many consumers
     affected or likely to be affected by it?

24   *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778,
25   790 (1986).

26        Plaintiff does not claim that Unum's denial of coverage violated the CPA,
27   but rather that Unum and U.S. Bank misrepresented pertinent policy provisions in
28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 17

their solicitation of Keith Matheny's business. The Court agrees. As detailed above, the solicitation materials affirmatively misrepresented the condition that coverage was contingent upon payment of the first premium, representing instead that coverage was created simply by returning a signed enrollment form. The welcome packet materials added another layer of misrepresentation, fostering the impression that Keith Matheny's insurance coverage was already in force. In addition, the Court finds that these deceptive acts satisfy the *Hangman* factors for public interest impact. The solicitation and welcome packet materials were part of an ongoing course of conduct affecting thousands of consumers, both before and after the incidents at issue here. Because of this strong public interest impact, the Court finds that treble damages authorized by RCW 19.86.090 are appropriate.

The misleading language in the solicitation and welcome packet materials also meets the elements of a misrepresentation claim: "(1) a false statement (2) made to induce a business transaction (3) upon which the other party justifiably relies." *Amtruck Factors v. Int'l Forest Products*, 59 Wash. App. 8, 18 (1990). Here, Keith Matheny justifiably relied on the false statements in the solicitation materials that no additional checks were necessary in order to effectuate coverage.

In addition to violating the CPA, a failure to investigate an insurance claim can support a bad faith cause of action. *Coventry Associates v. American States Ins. Co.,* 136 Wash. 2d 269, 279 (1998). However, no claim for bad faith will lie where, as here, "the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests." *Id.* at 280. There is no evidence that DRIASI and Unum failed to adequately and reasonably investigate Plaintiff's claim in good faith. Therefore, Plaintiff's claims on these grounds must fail.

///

///

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 18

DAMAGES

Plaintiff is entitled to damages from Unum and U.S. Bank for breach of contract, violations of the CPA, and misrepresentation. Plaintiff is also entitled to damages from U.S. Bank for negligence. Plaintiff has proven no claims against DRIASI.

The amount of actual damages is Plaintiff's benefit of the bargain, the amount of the losses proximately caused by Defendants' breach of contract and misrepresentation: $250,000.00. *See Turner v. Enders*, 15 Wash. App. 875, 880 (1976). In addition, the Court finds that treble damages in the statutory maximum amount of $10,000.00 are appropriate. *See* RCW 19.86.090. Defendants Unum and U.S. Bank are thus jointly and severally liable for damages in the amount of $260,000.00.

Plaintiff also seeks pre-judgment interest, as well as reasonable attorney fees and costs pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37(1991) and RCW 19.86.090. Plaintiff has submitted briefing on the issue of pre-judgment interest (see Ct. Rec. 107), but Defendants have not yet submitted a response. Defendants are directed to do so, and Plaintiff is directed to submit briefing on the issue of fees and costs.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiff is to present a proposed judgment consistent with this Order.

2.  No later than thirty days from the date of this Order, the parties shall submit briefing to the Court on the issues of prejudgment interest and attorneys fees and costs.

///
///
///
///
///

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 19

1    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

2  Order and forward copies to counsel.

3    **DATED** this 7th day of January, 2009.

4                            *S/ Robert H. Whaley*

5                        ROBERT H. WHALEY
                   Chief United States District Judge
6

7

8  Q:\CIVIL\2006\Matheny\ffcl.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** * 20